PATRICK BALDWIN, ESQ. (SBN 93337)
CHRISTOPHER MADER, ESQ. (SBN 199605)
BALDWIN MADER LAW GROUP
516 N. Sepulveda Boulevard
Manhattan Beach, CA 90266
Phone: (310) 363-2031
*Attorneys for Plaintiffs Rolloco Holdings, Inc., Cathy Rollo and Tony Rollo*

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| ROLLOCO HOLDINGS, INC., a Canadian Corporation; CATHY ROLLO, an individual; and, TONY ROLLO, an individual,<br><br>                    Plaintiffs,<br><br>        v.<br><br>BAKER & HOSTETLER, LLP, a New York  Limited Liability Partnership,<br><br>                    Defendant.<br>_____ | **CASE NO.:**<br><br>**COMPLAINT FOR DAMAGES**<br><br>**DEMAND FOR JURY TRIAL**<br><br>(1)   Fraud<br>(2)   Fraudulent Inducement<br>(3)   Intentional Misrepresentation<br>(4)   Negligent Misrepresentation<br>(5)   Legal Malpractice<br>(6)   Breach of Fiduciary Duty<br>(7)   Constructive Fraud |

Plaintiffs Rolloco Holdings, Inc., Cathy Rollo and Tony Rollo complain against Defendant Baker & Hostetler, LLP as follows.

**I.**
**INTRODUCTION**

1.      From 2011 through 2013, Plaintiffs invested a total of $2.81M in a purported condominium development project to be built in Desert Hot Springs, California. In connection with their investments, the Plaintiffs owned 100% of the outstanding shares of third-party VLP Capital, Inc., a California Corporation ("VLP").

2.     In 2016, the Plaintiffs filed a Complaint against VLP (and its control persons and related entities) in this Court, alleging that they were defrauded in connection with their investments.  Defendant Baker & Hostetler, LLP represented VLP in that action.

3.     On March 19, 2018, Plaintiffs and VLP entered a Settlement Agreement, pursuant to which in exchange for the Plaintiffs' dismissal with prejudice of the action: (i) VLP issued a $2.56M Promissory Note in favor of the Plaintiffs; and, (ii) VLP provided security for the Promissory Note in the form of a $2.56M Second Deed of Trust in the Plaintiffs' favor on land located in Riverside County.

4.     Plaintiffs' $2.56M Second Deed of Trust was subordinate to Senior Debt held by third-party R2H, LLC ("R2H").  Plaintiffs' $2.56M Second Deed of Trust, drafted by Baker, specifically warranted as follows regarding that Senior Debt:

> "**Trustor [VLP] hereby warrants to Beneficiary [the Plaintiffs] that Trustor's obligation pursuant to any such senior Deed of Trust [the senior debt owed to R2H] is fully current and that no default exists with respect thereto.**" <u>**Exhibit A**</u>. *Emphasis added.*

5.     VLP's warranty that the Senior Debt was current was false when made.

6.     On March 5, 2018 – *two weeks before Plaintiffs and VLP entered the Settlement Agreement* – R2H's counsel had served via FedEx upon VLP <u>and</u> Baker a Notice of Default on the Senior Debt.  Neither VLP nor Baker ever disclosed the March 5, 2018 Notice of Default to the Plaintiffs.

7.     It was not until May 7, 2018, long after the Plaintiffs had dismissed with prejudice the action per the terms of the Settlement Agreement, that Plaintiffs first learned of VLP's default on the Senior Debt.  That same day, Plaintiffs' counsel sent an e-mail to Baker stating:

"We need to know ASAP and for what period of time the payments to R2H have not been paid. The representation was made to us as a basis of the settlement that all payments were current and the sale proceeding with an expectation of closing. It is clear those representations were or may have been false. We need a status and an explanation."

8.     Baker did not substantively rebut or contest Plaintiffs' counsel's e-mail.

9.     When the land securing the Plaintiffs' Promissory Note was sold at auction in November 2018, the Plaintiffs' $2.56M Second Deed of Trust was extinguished (leaving the Promissory Note unsecured). Of course, the Plaintiffs have not been paid any amount of the $2.56M Promissory Note.

10.     On August 2, 2019, Plaintiffs and their counsel learned for the first time that **R2H's March 5, 2018 Notice of Default had been served directly on Baker**.

11.     In other words, on August 2, 2019 Plaintiffs first learned that Baker had actual knowledge that its client's warranty to the Plaintiffs concerning the Senior Debt was <u>false</u> when made, and thus was fraudulent. Baker knew that if the Plaintiffs learned about the March 5, 2018 Notice of Default, they would never enter the Settlement Agreement, and fraudulently concealed the true facts from the Plaintiffs, in order to induce them to enter the Settlement Agreement.

## II.
## PARTIES

12.     At all relevant times, Plaintiff Rolloco Holdings, Inc. is and was a Canadian corporation, based in Winnipeg, Canada. Plaintiff Cathy Rollo and Plaintiff Tony Rollo are the sole shareholders of Plaintiff Rolloco Holdings, Inc.

13.     At all relevant times, Plaintiff Cathy Rollo is and was an individual residing in Winnipeg, Canada.

14.     At all relevant times, Plaintiff Tony Rollo is and was an individual residing in Winnipeg, Canada.

15.     Plaintiffs Rolloco Holdings, Inc., Cathy Rollo and Tony Rollo are referred to herein collectively as the "Plaintiffs."

16.     At all relevant times, Defendant Baker & Hostetler, LLP ("Baker") is and was a New York Limited Liability Partnership with offices in Los Angeles, California.  All the acts and omissions set forth herein were undertaken by Baker's agents, who were acting within the scope of their employment.  Baker is liable for said acts and omissions, and consequent damage, as set forth herein.

### III.
### JURISDICTION AND VENUE

17.     This Court has original jurisdiction of this matter pursuant to 28 U.S.C. §1332, because there is complete diversity of citizenship and the amount in controversy is in excess of $100,000.

18.     Venue is proper in this District pursuant to 28 U.S.C. §1391(b).

### IV.
### FACTS

19.     Beginning in 2011 and continuing through 2013, Plaintiffs made investments in the total amount of $2.81M in a purported condominium development project to be built on the land surrounding the Desert Dunes Golf Course in Desert Hot Springs, California. In connection with their investments, the Plaintiffs owned 100% of the outstanding shares of third-party VLP.

/ / /

/ / /

20.     On November 9, 2016, Plaintiffs filed a Complaint against VLP (and its control persons and related entities) in this Court, Case No. 5:16-cv-2334-JGB, styled *Rolloco Holdings, Inc. v. VLP Capital, Inc.* (the "2016 Action"), alleging that they were defrauded in connection with their investments in the purported condominium project.

21.     Defendant Baker represented VLP (and its control persons and related entities) in the 2016 Action, and third-party Baldwin Mader Law Group ("BMLG") represented the Plaintiffs.  Following mediation and extended settlement negotiations which continued almost daily for approximately two months, on March 19, 2018 Plaintiffs and VLP entered a Settlement Agreement of the 2016 Action ("Settlement Agreement"), a true and correct copy of which is attached hereto as **Exhibit A** and incorporated herein.

22.     Per the terms of the Settlement Agreement, in exchange for the Plaintiffs' dismissal with prejudice of the 2016 Action: (i) VLP issued a $2.56M Promissory Note in favor of the Plaintiffs; and, (ii) VLP provided security for the Promissory Note, in the form of a $2.56M Second Deed of Trust in the Plaintiffs' favor on land located in Riverside County referred to by the parties as the "North Section."

23.     Plaintiffs' $2.56M Second Deed of Trust was subordinate to Senior Debt on the North Section held by third-party R2H, LLC ("R2H").  Plaintiffs' $2.56M Second Deed of Trust, drafted by Baker, specifically warranted as follows:

> "**Trustor [VLP] hereby warrants to Beneficiary [the Plaintiffs] that Trustor's obligation pursuant to any such senior Deed of Trust [the senior debt owed to R2H] is fully current and that no default exists with respect thereto.**" **Exhibit A**. *Emphasis added.*

/ / /

/ / /

24.     Absent VLP's warranty that its Senior Debt owed to R2H was "fully current," the Plaintiffs would not have entered into the Settlement Agreement and would not have agreed to dismiss the 2016 Action.

25.     VLP's warranty that the Senior Debt was current was false when made.

26.     Fourteen days before the Settlement Agreement was executed, on March 5, 2018, R2H's counsel served via FedEx upon VLP <u>and</u> Baker a Notice of Default on the Senior Debt (a true and correct copy of which is attached hereto as **<u>Exhibit B</u>** and incorporated herein).  R2H specifically wrote to VLP <u>and</u> Baker in connection with the March 5, 2018 Notice of Default on the Senior Debt:

> ". . . [T]his firm represents R2H as holder of the [Senior Debt on the North Section].  R2H has verified to us that Events of Default . . . have occurred by virtue of among other things, failure to pay, on or before the due date, the scheduled payments due on January 15, 2018 and February 1, 2018 as described in the [senior debt instruments]." **<u>Exhibit B</u>**.

27.     Neither VLP nor its counsel, Baker ever disclosed the March 5, 2018 Notice of Default to the Plaintiffs or their counsel.

28.     It was not until May 7, 2018 – long after the Plaintiffs had dismissed with prejudice the 2016 Action per the terms of the Settlement Agreement – that Plaintiffs first learned of VLP's default on the Senior Debt.  On May 7, 2018, Plaintiffs received two "Notices of Default and Election to Sell" recorded by R2H on April 24, 2018 stating that as of January 26, 2018 – *nearly two months before the Settlement Agreement* – VLP was in default on the Senior Debt in the total amount of $593,624.90.

29.     On May 7, 2018, Plaintiffs' counsel sent an e-mail to Baker (a true and correct copy of which is attached hereto as **<u>Exhibit C</u>** and incorporated herein) stating:

"We need to know ASAP and for what period of time the payments to R2H have not been paid. **The representation was made to us as a basis of the settlement that all payments were current and the sale proceeding with an expectation of closing**. **It is clear those representations were or may have been false**. We need a status and an explanation." *Emphasis added.*

30.     Baker did not substantively rebut, contest or respond to Plaintiffs' counsel's May 7, 2018 e-mail.

31.     The North Section was sold at auction in November 2018, extinguishing the Plaintiffs' $2.56M Second Deed of Trust (leaving the Promissory Note unsecured). Unsurprisingly, the Plaintiffs have not been paid any amount of the $2.56M Promissory Note, and have no prospect of collecting because the Promissory Note is now unsecured.

32.     On July 2, 2018, the Plaintiffs filed a Complaint against VLP in the California Superior Court, Riverside County Case No. PSC 1803686, styled *Rolloco Holdings, Inc. v. VLP Capital, Inc.* (the "2018 Action"), alleging that VLP fraudulently induced the Settlement Agreement.

33.     Plaintiffs' counsel first obtained a copy of the Notice of Default (**Exhibit B**) on August 2, 2019, when R2H's counsel e-mailed a copy of the notice to Plaintiffs in connection with the 2018 Action. It was then, August 2, 2019, that Plaintiffs and their counsel first learned that R2H's Notice of Default had been served directly upon Baker on March 5, 2018. Thus, Plaintiffs then learned for the first time that Baker had actual knowledge that its client's warranty to the Plaintiffs concerning the Senior Debt was <u>false</u> when made, and thus was fraudulent.

/ / /

/ / /

34.     Baker knew that if the Plaintiffs or their counsel learned about the March 5, 2018 Notice of Default, the Plaintiffs would never enter the Settlement Agreement.  Baker therefore fraudulently concealed the true facts from the Plaintiffs, in order to induce them to enter the Settlement Agreement on March 19, 2018 and dismiss the 2016 Action.

**V.**
**CAUSES OF ACTION**

**FIRST CAUSE OF ACTION**
**Fraud**

35.     Plaintiffs incorporate herein by reference the allegations set forth herein in their entirety.

36.     On March 19, 2018, the Plaintiffs and VLP entered a Settlement Agreement of the 2016 Action (**Exhibit A**) pursuant to which VLP warranted:

> "This Deed of Trust is subject and subordinate to the liens of other mortgages or deeds of trust (collectively, "Senior Encumbrance"), and Trustor agrees to perform and discharge in due course and in accordance with their terms and provisions, all obligations secured by the Senior Encumbrance, including all other agreements or obligations undertaken or created for the purpose of evidencing or securing the obligations evidenced by the notes (collectively, "Senior Note") secured by the Senior Encumbrance (together "Senior Encumbrance Obligations"). **Trustor hereby warrants to Beneficiary that Trustor's obligation pursuant to any such senior Deed of Trust is fully current and that no default exists with respect thereto.**"  **Exhibit A**. *Emphasis added.*

37.     At the time the Settlement Agreement was entered on March 19, 2018, Baker had actual knowledge that: (i) its client VLP's warranty concerning the Senior Debt was false; and, (ii) if the Plaintiffs learned about the March 5, 2018 Notice of Default, they would not enter the Settlement Agreement and agree to dismiss the 2016 Action.

/ / /

38.     In order to induce the Plaintiffs to enter the Settlement Agreement and dismiss the 2016 Action, Baker intentionally concealed the existence of the March 5, 2018 Notice of Default, of which it had actual notice, from the Plaintiffs.

39.     Under the totality of the circumstances, pursuant to both California law and applicable ethical standards and obligations, Baker was required to disclose to the Plaintiffs the Notice of Default (of which Baker had received actual notice on March 5, 2018).

40.     From March 5, 2018 going forward, Baker had actual knowledge that its client's warranty concerning the Senior Debt was false and the consideration that its client was purportedly providing to the Plaintiffs – a **secured** note – was illusory.  Had Plaintiffs known the truth which was concealed by Baker, they would not have entered into the Settlement Agreement.

41.     ". . . [A]n attorney may not, with impunity, either conspire with a client to defraud or injure a third person or engage in intentional tortious conduct toward a third person . . . Thus, the case law is clear that a duty is owed by an attorney not to defraud another, even if that other is an attorney negotiating at arm's length. . . . A misrepresentation can occur through direct statement or through affirmation of a misrepresentation of another, as when a lawyer knowingly affirms a client's false or misleading statement." *Shafer v. Berger Kahn*, 107 Cal.App.4th 54 (2003).

42.     Plaintiffs have been damaged as a direct and proximate result of Baker's conduct alleged herein.  In doing the acts alleged herein, Baker acted with fraud, oppression and/or malice entitling Plaintiffs to punitive damages according to proof at trial.

WHEREFORE, Plaintiffs seek damages as set forth hereinafter.

## SECOND CAUSE OF ACTION
### Fraudulent Inducement

43.     Plaintiffs incorporate herein by reference the allegations set forth herein in their entirety.

44.     On March 19, 2018, the Plaintiffs entered a Settlement Agreement of the 2016 Action (**Exhibit A**) pursuant to which Baker's clients represented and warranted that the senior debt owed on the North Section was current.  Baker knew that its clients' warranty and representation concerning the senior debt were false at the time the Settlement Agreement was entered on March 19, 2018.

45.     Knowing that the Plaintiffs would not enter the Settlement Agreement if they knew about the March 5, 2018 Notice of Default, Baker intentionally concealed the existence of that Notice of Default from the Plaintiffs.

46.     Baker did so in order to induce the Plaintiffs to enter the Settlement Agreement and to dismiss the 2016 Action.

47.      Under California law, an attorney may not conspire with a client to defraud a third person or engage in intentional tortious conduct toward a third person.  *Shafer*, *supra.* An actionable misrepresentation can occur through affirmation of a misrepresentation of another "as when a lawyer knowingly affirms a client's false or misleading statement." *Id.*

48.     Plaintiffs reasonably relied on the representations and warranties described herein that the senior debt owed on the North Section was current.  Had Plaintiffs known the foregoing material facts, the Plaintiffs would not have entered into the Settlement Agreement.

49.     Plaintiffs have been damaged as a direct and proximate result of Baker's conduct as set forth herein.  In doing the acts herein alleged, Baker acted with fraud, oppression, and/or malice entitling Plaintiffs to punitive damages according to proof at trial.

WHEREFORE, Plaintiffs seek damages as set forth hereinafter.

### THIRD CAUSE OF ACTION
### <u>Intentional Misrepresentation</u>

50.     Plaintiffs incorporate herein by reference the allegations set forth herein in their entirety.

51.     On March 19, 2018, the Plaintiffs entered a Settlement Agreement of the 2016 Action (**Exhibit A**) pursuant to which Baker's clients represented and warranted that the senior debt owed on the North Section was current.  Baker knew that its clients' warranty and representation concerning the senior debt were false at the time the Settlement Agreement was entered on March 19, 2018.

52.     Knowing that the Plaintiffs would not enter the Settlement Agreement if they knew about the March 5, 2018 Notice of Default, Baker intentionally concealed the existence of that Notice of Default from the Plaintiffs.

53.     Baker did so in order to induce the Plaintiffs to enter the Settlement Agreement and to dismiss the 2016 Action.  Plaintiffs reasonably relied on the representations and warranties described herein that the senior debt owed on the North Section was current.  Had Plaintiffs known the foregoing material facts, the Plaintiffs would not have entered into the Settlement Agreement.

///

54.     Plaintiffs have been damaged as a direct and proximate result of Baker's conduct as set forth herein.   In doing the acts herein alleged, Baker acted with fraud, oppression, and/or malice entitling Plaintiffs to punitive damages according to proof at trial.

WHEREFORE, Plaintiffs seek damages as set forth hereinafter.

**FOURTH CAUSE OF ACTION**
**Negligent Misrepresentation**

55.     Plaintiffs incorporate herein by reference the allegations set forth herein in their entirety.

56.     On March 19, 2018, the Plaintiffs entered a Settlement Agreement of the 2016 Action (**Exhibit A**) pursuant to which Baker's clients represented and warranted that the senior debt owed on the North Section was current.   Baker knew that its clients' warranty and representation concerning the senior debt were false at the time the Settlement Agreement was entered on March 19, 2018.

57.     Knowing that the Plaintiffs would not enter the Settlement Agreement if they knew about the March 5, 2018 Notice of Default, Baker concealed the existence of that Notice of Default from the Plaintiffs.   Baker did so in order to induce the Plaintiffs to enter the Settlement Agreement and to dismiss the 2016 Action.

58.     Plaintiffs reasonably relied on the representations and warranties described herein that the senior debt owed on the North Section was current.   Had Plaintiffs known the foregoing material facts, the Plaintiffs would not have entered into the Settlement Agreement.

/ / /

59.    Plaintiffs have been damaged as a direct and proximate result of Baker's conduct as set forth herein.

WHEREFORE, Plaintiffs seek damages as set forth hereinafter.

### FIFTH CAUSE OF ACTION
### Legal Malpractice Derivatively on Behalf of VLP Capital, Inc.

60.    Plaintiffs incorporate herein by reference the allegations set forth herein in their entirety.

61.    Third-party VLP Capital, Inc. (now known as BTC Developments, Inc.) is and was at all relevant times a corporation duly organized and existing under California law.  Plaintiffs owned 100% of the outstanding shares of VLP.  In fact, Plaintiffs were provided a Legal Opinion prepared by the Hewell Law Firm of San Diego, California confirming that they owned 100% of the outstanding shares of VLP.

62.    Baker is and was at all relevant times the attorneys for VLP.  Accordingly, Baker owed duties to VLP to use the skill and care that a reasonably careful attorney would have used in similar circumstances.

63.    Plaintiffs are entitled to recover from Baker the actual damages they have sustained and will sustain as a result of Baker's wrongful acts as alleged herein in an amount to be determined at trial.  All of the Plaintiffs' damages alleged could have been avoided by the use of ordinary care, and the failure of Baker to exercise ordinary care makes them accountable for those damages.

64.    This action is commenced and prosecuted on behalf of Plaintiffs and for the benefit of VLP, pursuant to the provisions of California Corporations Code §800.

WHEREFORE, Plaintiffs seek damages as set forth hereinafter.

## SIXTH CAUSE OF ACTION
### Breach of Fiduciary Duty

65.     Plaintiffs incorporate herein by reference the allegations set forth herein in their entirety.

66.     Third-party VLP Capital, Inc. (now known as BTC Developments, Inc.) is and was at all relevant times a limited liability company duly organized and existing under California law.  In connection with the investments described herein, the Plaintiffs owned 100% of the outstanding shares of VLP.

67.     Accordingly, Baker also owed clear and unequivocal fiduciary duties to Plaintiffs, who were majority shareholders of VLP, as imposed by statute and common law.  Baker breached their fiduciary duties to Plaintiffs in numerous ways, by intentionally committing the acts set forth in the preceding paragraphs, including, but not limited to wasting the assets of VLP by causing it to expend hundreds of thousands of dollars in legal fees as a result of Baker's fraudulent conduct described herein.

68.      Plaintiffs are entitled to recover from Baker the actual damages they have sustained and will sustain as a result of Baker's wrongful acts as alleged herein.  All of the damages alleged could have been avoided by Baker's use of ordinary care.

69.     Baker's conduct, as described above, was a series of willful and malicious breaches of their fiduciary duties to Plaintiffs in a manner which support the award of punitive damages.  Said conduct was performed by Baker knowing that their actions would proximately harm Plaintiffs and that their actions were in breach of their fiduciary duties of loyalty and care to act in Plaintiffs' best interests.

/ / /

70. Baker knew that their breaches of fiduciary duty would directly affect Plaintiffs, and Baker was aware that Plaintiffs would suffer harm as a result of their actions. Plaintiffs are entitled to punitive damages in an amount to be determined at trial.

71. This action is commenced and prosecuted on behalf of Plaintiffs and for the benefit of VLP, pursuant to the provisions of California Corporations Code §800.

WHEREFORE, Plaintiffs seek damages as set forth hereinafter.

### SEVENTH CAUSE OF ACTION
### Constructive Fraud

72. Plaintiffs incorporate herein by reference the allegations set forth herein in their entirety.

73. "Constructive fraud comprises any act, omission or concealment involving a breach of legal or equitable duty, trust or confidence which results in damage to another, even though the conduct is not otherwise fraudulent." *Salahutdin v. Valley of California, Inc*., 24 Cal.App.4th 555, 562 (1994).

74. Baker owed Plaintiffs an obligation and duty by the nature of their relationship, which duty was breached by the acts, omissions and concealment of facts described herein. As a result of Baker's breach of duties owed to Plaintiffs, they have been damaged in an amount to be proven at trial.

75. Plaintiffs have been damaged as a direct and proximate result of Baker's conduct as set forth herein. In doing the acts herein alleged, Baker acted with fraud, oppression, and/or malice entitling Plaintiffs to punitive damages according to proof at trial.

WHEREFORE, Plaintiffs seek damages as set forth hereinafter.

## VI.
### PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that this Court award them the following relief, including, but not limited to:

1.    Compensatory damages in an amount in excess of the jurisdictional minimum of this Court, but in all events no less than $2.81M;

2.    Interest at the rate of 10%;

3.    Restitution;

4.    Rescission;

5.    Attorney's fees and costs of suit, per the Settlement Agreement in an amount to be determined;

6.    Punitive damages;

7.    Such other and further relief as this Court deems just and proper.

Dated:  October 20, 2021                    BALDWIN MADER LAW GROUP

                                            By: _____
                                                Patrick Baldwin, Esq.
                                                Christopher Mader, Esq.
                                                *Attorneys for Plaintiffs*